IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

E.I. DU PONT DE NEMOURS AND )
COMPANY )
v. ) NO. 3:03-848
 ) JUDGE CAMPBELL
CARDINAL HEALTH, INC., ET AL )

MEMORANDUM

Pending before the Court is Defendants BBA U.S. Holdings, Inc. and BBA Nonwovens Simpsonville, Inc.'s Motion for Summary Judgment Concerning Dupont's Patent Infringement Allegations (Docket No. 357). For the reasons stated herein, Defendants' Motion (Docket No. 357) is GRANTED and all patent claims are dismissed.

Also pending before the Court is Dupont's Motion to Strike or, in the Alternative, Dupont's Motion for Leave to File a Surreply to BBA's Reply Brief in Support of its Motion for Summary Judgment (Docket No. 436). Dupont's Motion to Strike (Docket No. 436) is DENIED. Dupont's Motion for Leave to File Surreply (Docket No. 436) is GRANTED and the Clerk is directed to file Dupont's Surreply.

BACKGROUND FACTS

Plaintiff E.I. Du Pont De Nemours and Company ("Dupont") asserts that Defendants BBA U.S. Holdings, Inc. and BBA Nonwovens Simpsonville, Inc. (collectively "BBA") have infringed a patent owned by Dupont. The patent at issue is U.S. Patent No. 5,885,909 (the "'909 Patent") which issued on March 23, 1999 (Docket No. 174, Ex. 1). The '909 Patent relates to a nonwoven fabric that is both breathable while having excellent liquid barrier properties and is commonly used in medical applications such as surgical drapes and gowns (Docket No. 174, Ex. 1). Dupont asserts that BBA sells a fabric that it manufactures for Cardinal Health 200, Inc.

("Cardinal') which infringes Claim 64 of the '909 Patent (Docket No. 171 at 10).[1] The BBA product that Dupont accuses of infringement is a custom product that BBA makes for Cardinal. Cardinal uses the custom fabric to make surgical gowns and drapes (Docket No. 390 at 1-2 and Docket No. 176 at 7).

Dependent Claim 64 of the '909 Patent reads as follows:

Claim 64:

The sheet material according to any of Claims 1, 3, 4, 5, 6, and 7 wherein the material has a cross sectional void percentage of at least about 85 percent.

Independent Claims 4 and 5 of the '909 Patent read as follows:

Claim 4:

A flexible sheet material having a Frazier permeability of at least about 15 m3/min-m2 and a hydrostatic head of at least about 40 cm.

Claim 5:

A flexible sheet material having a combination of Frazier permeability and hydrostatic head properties selected from the group of:

a Frazier permeability of at least 70 m3/min-m2 and an unsupported hydrostatic head of at least about 15 cm;

a Frazier permeability of at least 28 m3/min-m2 and an unsupported hydrostatic head of at least about 30cm;

a Frazier permeability of at least 15 m3/min-m2 and an unsupported hydrostatic head of

---

[1]Claim 64 is a dependent claim that depends from either independent Claim 4 or 5 of the '909 Patent (Docket No. 171 at 10).

at least about 40 cm; and

       a Frazier permeability of at least 1 m3/min-m2 and an unsupported hydrostatic head of at least about 80 cm.

(Docket No. 174, Ex. 1).

       The parties dispute the following terms of the '909 Patent: 1) "Flexible Sheet Material"; 2) "Frasier Permeability"; 3) " Hydrostatic Head"; 4) "At Least About"; and 5) "Cross-Sectional Void Percentage".

       By contemporaneous Order and Memorandum, the Court construed the disputed claim terms of the '909 Patent as follows:

1. "Flexible Sheet Material": as "a single sheet of material that is easily bent composed of nonwoven meltspun fibers."

2. "Frasier Permeability": as "a measurement of the ease with which air passes through material (based upon the rate of flow of air per unit area of fabric) at a specified pressure drop, typically performed according to ASTM D737 and IST 70.1."

3. "Hydrostatic Head": as "a measurement of the resistance of fabrics to the penetration of water under hydrostatic pressure, typically performed according to AATCC 127, IST 80.4, and IST 80.6."

4. "At Least About": as "at least .05 below the claimed number."

5. "Cross-Sectional Void Percentage": as "a measure of the porosity of a cross section (i.e., a cutting or piece cut off at right angles to an axis) of the material, equal to the volume of voids (or air space) in the cross section of the material structure divided by the total volume of the cross section of the material and multiplied by 100."

BBA has filed a motion for summary judgment (Docket No. 357) of non-infringement, both literal and under the doctrine of equivalents, and for invalidity, either under the theory of indefiniteness or anticipation.

SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003).  In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial.  Meyers, 341 F.3d at 466.  A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id.  The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial.  Hopson, 306 F.3d at 432.

ANALYSIS

"'A determination of infringement is a two-step process.  The court must first correctly construe the asserted claims, and then compare the properly construed claims to the allegedly infringing devices, systems, or methods.'" Seachange Int'l, Inc. v. C-Cor, Inc., 413 F. 3d 1361, 1377 (Fed. Cir. 2005) (quoting NTP, Inc. v. Research In Motion, Ltd., 392 F. 3d 1336, 1358 (Fed. Cir. 2004), overruled on other grounds by, NTP, Inc. v. Research In Motion, Ltd., ____ F.

4

3d ___ (Fed. Cir. 2005)). "'To prove infringement, the patentee must show that the accused devices meets each claim limitation either literally or under the doctrine of equivalents.'" Id. (quoting Catalina Mktg. Int'l v. Coolsavings.com, Inc., 289 F. 3d 801, 807-08 (Fed. Cir. 2002)). Proof of literal infringement requires proof that "the accused device contains every limitation of the asserted claims." Riles v. Shell Exploration and Production Co., 298 F. 3d 1302, 1308 (Fed. Cir. 2002) (quoting Mas-Hamilton Group v. LaGard, Inc., 156 F. 3d 1206, 1211, 48 USPQ2d 1010, 1014-15 (Fed. Cir. 1998)). Proof of infringement under the doctrine of equivalents requires proof that the accused device contains an equivalent for each limitation not literally satisfied. Catalina Mktg. Int'l, 289 F. 3d at 812 (citing Dawn Equipment Co. v. Kentucky Farms, 140 F. 3d 1009, 1015, 46 USPQ2d 1109, 1113 (Fed. Cir. 1998)). A determination of infringement, whether literal or under the doctrine of equivalents, is a questions of fact. Boss Control, Inc. v. Bombardier, Inc., 410 F. 3d 1372, 1376 (Fed. Cir. 2005) (quoting Bai v. L&L Wings, Inc., 160 F. 3d 1350, 1353 (Fed. Cir. 1998)).

In support of its motion, BBA asserts that the claims of the '909 Patent do not cover the nonwoven fabric that it manufactures for Cardinal. More specifically, BBA asserts that its nonwoven fabric is a type of nonwoven material commonly referred to in the industry as SMS and that the invention of the '909 Patent is not directed toward SMS. SMS is used in the industry to indicate a type of nonwoven material that is a composite material having excellent barrier protection properties as well as breathability. The composite material of SMS is formed of different layers and different polymers are used to make the different layers (Docket No. 176, Declaration of Carl Palenske at 7). The parties do not dispute that the fabric manufactured by BBA is a composite SMS fabric (Docket No. 382 at 7).

5

In its earlier Memorandum, the Court found that the "flexible sheet material" of the '909 Patent was a nonwoven material composed of layers of meltspun fibers and did not cover the composite material of SMS. Thus, in light of the parties' agreement that the accused product is a composite SMS fabric, the claims of the '909 Patent, including disputed Claim 64, do not cover BBA's accused product, whether under a theory of literal infringement or under the doctrine of equivalents.

Accordingly, BBA's motion for summary judgment (Docket No. 358) is GRANTED. Given the Court's ruling, the Court declines to address BBA's remaining issues relating to indefiniteness, anticipation and invalidity of the '909 Patent.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

6

Case 3:03-cv-00848   Document 450   Filed 09/12/05   Page 6 of 6 PageID #: 9309