IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

```
E.I. DU PONT DE NEMOURS AND       )
COMPANY                           )
                                  )
         v.                       )   NO. 3:03-0848
                                  )
CARDINAL HEALTH, INC.             )
CARDINAL HEALTH 200, INC.         )
BBA NONWOVENS SIMPSONVILLE, INC.  )
and BBA GROUP U.S. HOLDINGS, INC. )
```

TO: Honorable Todd J. Campbell, District Judge

# R E P O R T   A N D   R E C O M M E N D A T I O N

By order entered April 15, 2004 (Docket Entry No. 87), this action was referred to the Magistrate Judge for a report and recommendation on all dispositive motions and for decision on all nondispositive motions.

Presently pending before the Court is the motion of Cardinal Health 200, Inc. (Docket Entry No. 339) for summary judgment, to which DuPont has filed a response in opposition (Docket Entry No. 393).

On September 23, 2005, the Court heard oral argument on the motion. For the reasons set out below, the Court recommends that the motion be granted in part.

## I. BACKGROUND

Plaintiff E.I. DuPont de Nemours and Company ("DuPont") brought this action on September 11, 2003, alleging claims sounding in contract, promissory estoppel, false advertising or unfair business practices, and patent infringement.

This action arises from a business dispute between DuPont and Cardinal Health 200, Inc. ("Cardinal") and Cardinal's parent company, Cardinal Health, Inc.,[1] and centers on nonwoven fabrics used in the medical field for surgical gowns and drapes. DuPont is a manufacturer of nonwoven fabrics, and Cardinal purchases bulk fabric and converts it into a finished product. For several years, Cardinal purchased large quantities of a nonwoven fabric known as Sontara from DuPont. However, the business relationship between DuPont and Cardinal weakened, and, in 2002, Cardinal announced that it would no longer purchase fabric from DuPont, either the Sontara fabric or a new line of fabric called Stratus. DuPont asserts that the Stratus fabric was developed to satisfy Cardinal's request for a new line of fabric and that Cardinal had committed to purchase Stratus. Believing that it has suffered substantial financial detriment because of Cardinal's actions, DuPont initiated the instant lawsuit.

DuPont pled eleven causes of action, seven of which were based entirely upon state law (Counts I-VII). DuPont also alleged four claims premised upon federal law, three claims for patent

---

[1] Allegiance Healthcare Corporation, Cardinal's predecessor, was originally named as a defendant but is no longer a party to the action.

2

infringement (Count IX-XI) and a claim under the Lanham Act, 15 U.S.C. § 1125(a) (Count VIII). BBA Group U.S. Holding, Inc., and BBA Nonwovens Simpsonville, Inc. (collectively "BBA"), companies which provided fabric to Cardinal post-DuPont, were also named as defendants on the patent infringement claims.

Because diversity jurisdiction does not exist between the parties, federal jurisdiction over the lawsuit is premised upon federal question jurisdiction under 28 U.S.C. § 1331 for the patent and Lanham Act claims and upon supplemental jurisdiction under 28 U.S.C. § 1367(a) for the remaining state law claims.

By order entered September 12, 2005 (Docket Entry No. 451), the Court granted summary judgment to the BBA defendants and dismissed all patent claims. Thus, Counts IX-XI are no longer a part of the action. By order entered September 29, 2004 (Docket Entry No. 116), Cardinal Health, Inc., was dismissed from the action, and the sole remaining defendant is Cardinal.

## II. CARDINAL'S MOTION FOR SUMMARY JUDGMENT

By its motion, Cardinal seeks summary judgment as to all counts of DuPont's Amended Complaint as to Cardinal's counterclaim for a violation of Tenn. Code. Ann. § 47-18-109(e)(2). Cardinal asserts that the evidence does not support DuPont's breach of contract (Counts I and II) and anticipatory repudiation (Count III) claims or, alternatively, that if a contract does exist, DuPont cannot show that it was able to perform its obligations. Cardinal

3

also argues that the promissory estoppel claim (Count IV) is unsupported by the facts or applicable law.

With respect to DuPont's false advertising claims under state law (Counts V-VII) and the Lanham Act (Count VIII), Cardinal contends that these claims fail because the undisputed facts establish that no false or deceptive statements were made by Cardinal about its own or DuPont's products.

Cardinal also seeks attorneys' fees and costs as a counter claim under the Tennessee Consumer Protection Act ("TCPA") because the TCPA claim (Count V) alleged by DuPont was frivolous from its inception and was interposed for the purposes of harassment.[2]

### III. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c); <u>Meyers v. Columbia/HCA Healthcare Corp.</u>, 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. <u>Id</u>.;

---

[2] Cardinal also sought summary judgment on the patent infringement claim brought against it. However, the Court's order entered September 12, 2005 (Docket Entry No. 451), renders this part of the motion moot.

4

Hopson v. Daimler Chrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

## IV. CONCLUSIONS

As set out below, the Court recommends that summary judgment be granted in favor of Cardinal on DuPont's Lanham Act claim. Upon dismissal of this claim, the only remaining claims are DuPont's state law claims and the only basis for asserting federal jurisdiction over this action would be through the exercise of supplemental jurisdiction over these claims under 28 U.S.C. § 1367. Because the Court finds the exercise of supplemental jurisdiction to be unwarranted, the Court recommends that this action be dismissed in its entirety.

### A. Factual Background for the Lanham Act Claim

DuPont alleges that Cardinal disseminated false advertising to customers in an effort to increase sales of Cardinal's new Tiburon surgical drapes. At issue is a product demonstration created by

5

Cardinal (the "Tiburon Demonstration") in which it compares the Tiburon surgical drape with competitors' drapes. The Tiburon Demonstration was performed by Cardinal representatives at trade shows and was also attached as a video E-mmercial sent to customers via e-mail.

The Tiburon Demonstration consists of a red-colored liquid being sprayed from a spray bottle against nonwoven fabric swatches as a means to show that Tiburon is impervious to fluids that are present in the operating room environment. In the demonstration, two other fabrics are placed on top of a layer of Tiburon and the liquid is sprayed onto the top fabric. The solution penetrates through the top two fabrics and passes onto the Tiburon layer but does not penetrate the Tiburon layer.

DuPont asserts that the Tiburon Demonstration misleads observers about the qualities of Dupont's fabric because the demonstration fails to mimic actual operating room conditions. DuPont specifically contends that the red liquid used in the demonstration does not have the same properties as blood or other body fluids and that the liquid is sprayed onto the fabrics using a fine, hard stream which is not representative of how fluids come into contact with surgical drapes in actual operating room settings. DuPont further contends that the fabric swatches used in the demonstration were cut from the unreinforced area of the surgical drape, which is the area least likely to come into contact with fluids during an operation, instead of from the fenestration area, i.e., the area surrounding the surgical area, which is the

6

area where fluids would normally come into contact with the drape. DuPont asserts that the fabric in the fenestration area, unlike the fabric in the rest of the drape, is reinforced with a plastic backing which prevent fluid penetration.[3]

B. Lanham Act Claim

The Lanham Act creates a cause of action for false or misleading advertising by providing, in relevant part:

> (a)(1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
> . . . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. See 15 U.S.C. § 1125(a)(1)(B).

To state a cause of action for misleading advertising, a plaintiff must establish the following elements: 1) the defendant has made a false or misleading statement of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is

---

[3] Initially, DuPont also asserted the Tiburon Letter and surfactant transfer theories as a basis for the false advertising claims, but these theories have either been dismissed or dropped from the action.

7

material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff. American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.., 185 F.3d 606, 613 (6th Cir. 1999).

To satisfy the first element, the plaintiff must show that statements at issue that are either (a) literally false, or (b) true yet misleading or confusing because the statements are deceptive or ambiguous. Id. at 614. The choice of whether to prove a literal false statement exists or to prove that the statement at issue is true yet misleading is significant because, when a claim is based upon literal falsity, a violation of the Lanham Act may be established without evidence that the statement actually misled consumers. Actual deception is presumed. Id. When the claim is based on a statement that is literally true, yet deceptive or ambiguous, a violation can only be established with either proof of actual deception in cases in which the plaintiff seeks damages or, in cases in which the plaintiff seeks injunctive relief, with proof that the misleading representations have a tendency to deceive consumers. Herman Miller v. Palazzetti Imports and Exports, 270 F.3d 298, 323 (6th Cir. 2001).

Cardinal's argument for summary judgment on the Lanham Act claim essentially takes two tracks. First, Cardinal contends that DuPont has not pointed to any statements in the Tiburon Demonstration which are literally false. Second, Cardinal contends

8

that, in the absence of showing a literally false statement, DuPont must prove that misleading statements existed and, thus, must also show proof of deception. Cardinal asserts that DuPont has failed in this burden.[4]

DuPont responds by confirming that it is pursuing its Lanham Act claim based on only a theory of literal falsity. See DuPont's Memorandum in Opposition (Docket Entry No. 389) at 32-34 and 36-38.[5] Accordingly, DuPont asserts that Cardinal's argument regarding DuPont's lack of proof of actual deception is misplaced and irrelevant because deception is presumed in a literal falsity case.[6]

Accordingly, DuPont's Lanham Act claim turns on the single issue of whether there is sufficient proof of literal falsity to

---

[4] Cardinal also interjects into its argument the assertion that no false or misleading statement about DuPont's fabrics could have been made in the Tiburon Demonstration because no fabric manufactured by DuPont was actually used. See Cardinal's Memorandum in Support (Docket Entry No. 341) at 28-29. DuPont responds by arguing that (1) factual issues exist regarding the fabric used in the Tiburon Demonstration, and (2) relief is available under the Lanham Act under the facts of this case even if its fabric was not actually used in the demonstration. See DuPont's Memorandum in Opposition (Docket Entry No. 394) at 38-39).
   Because the Court finds that the Lanham Act claim warrants dismissal even if the Court assumes that a DuPont fabric was used in the Tiburon Demonstration, this issue does not raise a material issue of genuine fact.

[5] At oral argument, counsel for DuPont likewise confirmed that a theory of literal falsity was the only theory being pursued for the Lanham Act claim.

[6] At this point in the litigation, DuPont seeks only injunctive relief and not damages on its Lanham Act claim. See Cardinal's Appendix of Exhibits to the Motion for Summary Judgment (Docket Entry No. 345) at Tab 103; DuPont's Memorandum in Opposition (Docket Entry No. 389) at 39-40.

9

raise genuine issues of material fact and send this claim to the trier of fact. The Court finds that there are not and that summary judgment should be granted to Cardinal on this claim.

The Court agrees with Cardinal that Dupont has not pointed to any actual statement or representation contained in the Tiburon Demonstration which can be shown to be literally false through evidentiary proof which is before the Court. DuPont has not even attempted to argue that an actual statement or representation was literally false. Instead, DuPont's argument is based entirely upon a theory that the Tiburon Demonstration did not represent a realistic operating room setting and did not accurately portray how fluids come into contact with surgical drapes in an actual operating room setting. Dupont points to the facts that actors in the Tiburon Demonstration are cloaked in medical garb, that medical images are incorporated into the demonstration, and that the demonstration contains statements about patient safety and problems associated with fabric strike-through as evidence that the demonstration as a whole portrays a false message that "in the normal use of drapes in an operating room, fluids will penetrate some drapes but not Tiburon." See DuPont's Memorandum (Docket Entry No. 389) at 37.

DuPont's argument simply misses the mark on literal falsity, and Dupont is attempting to fit a square peg into a round hole. There are no statements in the Tiburon Demonstration that the fabric strikethrough caused by a stream of fluid from a spray bottle represents the "actual fluid strikethrough rate of the

10

surgical drapes in realistic operating room settings." See DuPont's Memorandum at 38. The fluid penetration evidenced in the Tiburon Demonstration is exactly what it is: swatches of fabric showing fluid penetration after being sprayed with a spray bottle. Any other meaning is a meaning interjected by DuPont and is not included within the demonstration itself either verbally or visually.

There are also no statements in the demonstration which state that anything contained in the demonstration was a representation of an actual operating room setting. DuPont makes much of the fact that actors in the Tiburon Demonstration are shown in a medical setting or wear medical garb. The Court finds this to be wholly unpersuasive and unsupportive of a literal falsity argument. Nothing about these images has been shown by Dupont to be literally false. Regardless of how the actors in the demonstration were dressed, it stretches credibility to believe, as DuPont contends, that anyone who viewed fabric swatches held on a clipboard being sprayed with a handheld spray bottle would believe that such a demonstration was a representation of an actual operating room setting.

These shortcomings point out the critical flaw in Dupont's argument. DuPont's claim is not actually one of literal falsity of any particular representation but is instead one suggesting that the entire context of the demonstration is misleading to viewers. This argument is more properly directed toward a Lanham Act claim based on a theory of true statements which are misleading or

11

confusing because the statements are deceptive or ambiguous. All of DuPont's arguments and evidence are directed at the conclusion that the demonstration is misleading because of the way it is conducted.

Dupont points to factors involved in the Tiburon Demonstration such as the penetrating properties of colored water compared to other fluids, the velocity of the fluid sprayed on the fabric swatches, the placement of the clipboard holding the swatches on a vertical rather than horizontal plane, and the location from which the fabric swatches were taken. See DuPont's Memorandum (Docket Entry No. 389) at 34-36. However, none of these factors, even when viewed in the light most favorable to DuPont, show a literal falsity existed in the Tiburon Demonstration. For example, Cardinal did not represent in the demonstration that the red liquid sprayed was in fact blood or a similar substance. Nor did Cardinal represent that the fabric swatches used in the demonstration were taken from any particular area of the surgical drape. To reach the conclusion of literal falsity desired by DuPont, a viewer must draw conclusions and make inferences based on various parts of the demonstration. As has been noted, "the greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported." United Indust. Corp. v. Clorox Co., 140 F.3d 1175, 1181 (8th Cir. 1998). There is simply no unambiguous message conveyed in the Tiburon Demonstration which can be proven to be literally false.

The issue is not whether the demonstration could have been done more accurately or should have been done differently. The issue is not whether DuPont disagrees with the demonstration. The issue is whether the demonstration can be shown to be literally false. It cannot. There is simply no evidence before the Court upon which a reasonable trier of fact could conclude that the Tiburon Demonstration was literally false.

DuPont relies on two cases in support of its argument. <u>Coca Cola v. Tropicana</u>, 690 F.2d 312, 314 (2nd Cir. 1982), and <u>S.C. Johnson & Son, Inc. v. Clorox Co.</u>, 241 F.3d 232 (2nd Cir. 2001). Neither of these cases actually carries the day for DuPont because both cases are factually distinguishable.

In <u>Tropicana</u>, the advertisement at issue contained both a visual component and an oral statement, both of which represented that the product at issue, orange juice, was produced by squeezing oranges and pouring the freshly squeezed orange juice directly into the carton. The Court found that both of these statements were blatantly false because that was not, in fact, the manner in which the orange juice at issue was prepared. <u>Tropicana</u>, 690 F.2d at 318. There are no such blatantly false statements involved in the instant case.

In <u>S.C. Johnson</u>, the Court's finding of literal falsity was based upon a factual finding that the visual presentation made in the advertising at issue was flatly contradicted by objective evidence. 241 F.3d at 239. The actual visual presentation in <u>S.C. Johnson</u> involved ziploc bags filled with water and showed the

13

competitor's bag to rapidly and readily leak. The Court was presented with results from tests conducted on the leakage rates of the ziploc bags under the exact same condition and presentation that was shown in the advertisement. This evidence showed that the competitor's ziploc bags did not, in fact, rapidly or readily leak at the rate shown in the advertisement. Therefore, the Court found that the visual presentation contained in the advertisement was factually false. S.C. Johnson is distinguishable from the instant case because the actual demonstration involved in the Tiburon Demonstration, spraying fabric swatches with a spray bottle, has not been shown by any evidence to be false.

C. Supplemental Jurisdiction[7]

The only claims in this action over which original federal jurisdiction exists are DuPont's patent infringement claims, which have been dismissed, and the Lanham Act claim. The Court's jurisdiction over DuPont's state law claims is based upon the assertion of supplemental jurisdiction under 28 U.S.C. § 1367(a).

Dismissal of the Lanham Act claim thus raises the issue of retaining supplemental jurisdiction and calls into play 28 U.S.C. § 1367(c). This section provides that:

---

[7] The Court notes that the parties have submitted several filings which are specifically pertinent to the issue of supplemental jurisdiction. See Cardinal 200's Motion for Priority Consideration and supporting Memorandum (Docket Entry No. 465-66); DuPont's Response (Docket Entry No. 468); and DuPont's Memorandum Regarding Supplemental Authority (Docket Entry No. 470).

14

>     (c) The district courts may decline to exercise
>     supplemental jurisdiction over a claim under
>     subsection(a) if --
>             . . . .
>
>         (3) the district court has dismissed all
>         claims over which it has original
>         jurisdiction,

The decision of whether to retain jurisdiction over state law claims upon the dismissal of the federal law claims asserted in an action is left to the broad discretion of the court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-52 (1988); Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). A court considering whether to continue to exercise supplemental jurisdiction over such state law claims must consider the provisions of Section 1367(c) and the factors the United States Supreme Court outlined in Cohill, 484 U.S. at 350-51, and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). These factors include judicial economy, convenience, fairness, and comity. Cohill, 484 U.S. at 350. Although not mandatory or absolute, the general rule is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are eliminated from a case before trial. Musson, 89 F.3d at 1254-55 (gathering cases from the 6th Circuit Court of Appeals which follow the general rule).

In the instant action, the balance of factors weighs in favor of dismissal of DuPont's state law claims without prejudice so that they can be pursued in the state courts. The state law claims remaining in the action will require interpretation of state common

15

law[8] and statutes which consideration of comity require be left to the state courts. Further, although substantial pre-trial activity and discovery has occurred in the action, both parties will retain the benefit of such discovery in the state court. A lengthy trial in the action is anticipated, and post-trial matters can be expected. Additionally, it appears to the Court that the major thrust of this litigation has been the breach of contract and related claims and that at least the Lanham Act claim was a minor part of the action when compared to the significant state law claims.

**RECOMMENDATION**

Based on the foregoing, the Court respectfully RECOMMENDS that:

1) Cardinal Health 200, Inc.'s motion for summary judgment (Docket Entry No. 339) be GRANTED in part with respect to DuPont's claim under the Lanham Act;

2) the Court declines to exercise supplemental jurisdiction over any of the remaining state law claims under 28 U.S.C. § 1367 and that all state law claims in the action be DISMISSED WITHOUT PREJUDICE; and

3) that this action be DISMISSED in its entirety.

---

[8] For example, the Court notes that Cardinal has pending a motion for judgment on the pleadings on the promissory estoppel claim (Docket Entry No. 306), which is premised entirely upon Illinois law.

16

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge